## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| D.K., as Grandparent and Next Friend of<br>J.K, a Minor,<br><br>        Plaintiff,<br><br>v.<br><br>PITTSBURG COMMUNITY SCHOOLS<br>UNIFIED SCHOOL DISTRICT 250,<br>Serve:<br>J.B. Elliot, Superintendent<br>510 Deill Street<br>Pittsburg, KS 66762<br><br>and<br><br>SEK INTERLOCAL #637,<br>Serve at:<br>400 N Pine St.<br>Pittsburg, KS 66762<br><br>and<br><br>DIANE JACKSON, Individually and in her<br>official capacity,<br>Serve at:<br>1009 Amber Drive<br>Pittsburg, Kansas 66762<br><br>and<br><br>KATIE ALLISON WINGERT, Individually and in<br>her official capacity<br>Serve at:<br>1309 Martin Street<br>Coffeyville, Kansas 67337<br><br>and<br><br>GREG KUBLER, Individually and in his official<br>capacity<br>Serve at:<br>400 N Pine St. | )<br>)<br>)<br>)<br>)    **JURY TRIAL DEMANDED**<br>)<br>)    Case No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Pittsburg, KS 66762                        )
                                           )
and                                        )
                                           )
CHRIS RATZLAFF,  Individually and in his   )
official capacity                          )
Serve at:                                  )
Serve at:                                  )
400 N Pine St.                             )
Pittsburg, KS 66762                        )
                                           )
                        Defendants.        )


## COMPLAINT

COMES NOW Plaintiff J.K., by and through his grandparent and next friend, D.K., and through undersigned attorneys, states and alleges the following in support of his Complaint against above-named Defendants:

## PLAINTIFFS

1.      Plaintiff J.K. is a minor and resident of Kansas.  He was, at all times relevant herein, a student at George Nettels Elementary School, and a student within the Pittsburg Community Schools Unified School District 250.

2.      D.K. is the natural grandparent and a guardian of Plaintiff J.K. At all relevant times herein, D.K. has and continues to have temporary physical custody and legal custody of minor J.K.

3.      D.K. is an adult resident of Kansas. He is the grandfather of J.K. As such, he is an appropriate party to be appointed by the Court as Next Friend of J.K. for the purpose of pursuing the following causes of action against the above-named Defendants.

4.      Plaintiff has filed a Motion to Use Pseudonyms along with the filing of this Complaint. The anonymity of J.K. and D.K. is necessary to protect the identity of minor Plaintiff J.K., but Plaintiff is agreeable to disclosing their identities subject to appropriate protective orders

2

and/or as the Court may otherwise direct. Plaintiff's anonymity in the pleadings will not prejudice above-named Defendants in any way.

## **DEFENDANTS**

### *Pittsburg Community Schools Unified School District 250*

5.      Defendant Pittsburg Community Schools Unified School District 250 ("School District") is a public school district existing in and organized under the laws and regulations of the State of Kansas. Service may be had by serving the superintendent at the address included above.

6.      Defendant School District owns and operates George Nettels Elementary School now, and during the time in which plaintiff J.K. was a student there.

7.      At all times relevant hereto, Defendant School District was acting by and through its agents, servants, and/or employees, actual or ostensible, including, but not limited to Defendants Diane Jackson, Katie Allison Wingert, and Greg Kubler, each of whom were acting individually and within the course and scope of their employment with the School District. Defendant School District is liable for their actions or inactions described herein under the principles of vicarious liability and/or respondeat superior, and under the laws of the state of Kansas.

### *SEK Interlocal #637*

8.      Defendant SEK Interlocal #637 ("SEK") is a Kansas a cooperative entity created by thirteen area school districts to provide special education services to students within Defendant School District. SEK exists in and is organized under the laws and regulations of the State of Kansas.

9.      Defendant SEK provides and did provide special education services to George Nettels Elementary School, now and at the time that plaintiff J.K. was a student there.

10.    Upon information and belief, defendant SEK Interlocal #637 ("SEK") is a Kansas a cooperative entity created by thirteen area school districts to provide special education services to students within Defendant School District.

11.    At all times relevant hereto, Defendant SEK was acting by and through its agents, servants, and/or employees, actual or ostensible, including, but not limited to Defendant Katie Allison Wingert and Chris Ratzlaff, each of whom were acting individually and within the course and scope of their employment with SEK. Defendant SEK is liable for their actions or inactions described herein under the principles of vicarious liability and/or respondeat superior, and under the laws of the state of Kansas.

### *Diane Jackson*

12.    Upon information and belief, Defendant Diane Jackson ("Jackson") is a Kansas resident.

13.    At all times relevant to this Complaint, she was employed by Defendant School District as Principal for George Nettels Elementary School. She acted both individually and within the course and scope of her employment and/or agency with Defendant School District.

14.    Defendant School District is liable for Ms. Jackson's actions and inactions described herein under the principles of vicarious liability and/or respondent superior and the laws of Kansas.

### *Katie Allison Wingert*

15.    Upon information and belief, Defendant Katie Allison Wingert ("Wingert") is a Kansas resident.

16.    Upon information and belief, and at all times relevant to this Complaint, she was employed by Defendant SEK and Defendant School District as a special education teacher for

4

George Nettels Elementary School. She acted both individually and within the course and scope of her employment and/or agency with Defendant SEK and Defendant School District.

17.    Defendant SEK and Defendant School District are liable for Ms. Wingert's actions and inactions described herein under the principles of vicarious liability and/or respondent superior and the laws of Kansas.

### *Greg Kubler*

18.    Upon information and belief, Defendant Greg Kubler ("Kubler") is a Kansas resident.

19.    At all times relevant to this Complaint, he was employed by defendant SEK as Director for SEK Interlocal #637. He acted both individually and within the course and scope of his employment and/or agency with defendant SEK.

20.    Defendant SEK is liable for Mr. Kubler's actions and inactions described herein under the principles of vicarious liability and/or respondent superior and the laws of Kansas.

### *Chris Ratzlaff*

21.    Upon information and belief, Defendant Chris Ratzlaff ("Ratzlaff") is a Kansas resident.

22.    At all times relevant to this Complaint, he was employed by Defendant SEK as a Coordinator for SEK Interlocal #637. He acted both individually and within the course and scope of his employment and/or agency with Defendant SEK.

23.    Defendant SEK is liable for Mr. Ratzlaff's actions and inactions described herein under the principles of vicarious liability and/or respondent superior and the laws of Kansas.

## JURISDICTION AND VENUE

24.     Jurisdiction of this Court is proper under 28 U.S.C. § 1331 as Plaintiff asserts claims involving questions of federal law, including under 42 U.S.C. § 1983.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

26.     This Court has jurisdiction over the matter because Defendants' acts and omissions alleged herein occurred in Kansas.

27.     More specifically, Defendant Pittsburg Community Schools Unified School District 250 is subject to general and specific personal jurisdiction in Kansas because, on information and belief, it is a Kansas school district that conducts ongoing and substantial business in Kansas, has its principal place of business in Kansas, is a place of public accommodation in Kansas, and committed unlawful and tortious acts in Kansas which are alleged herein.

28.     Defendant SEK Interlocal #637 is subject to general and specific personal jurisdiction in Kansas because, on information and belief, it is a Kansas cooperative entity created by thirteen area school districts to provide special education services to students within Defendant School District, it conducts ongoing and substantial business in Kansas, has its principal place of business in Kansas, is a place of public accommodation in Kansas, and committed unlawful and tortious acts in Kansas which are alleged herein.

29.     Defendants Jackson, Wingert, Kubler and Ratzlaff are subject to general and specific personal jurisdiction in Kansas because, upon information and belief, they are residents of the state of Kansas, and because they committed unlawful and tortious acts in Kansas which are alleged herein.

30.    Plaintiff's first injury and the multiple discriminatory and tortious acts complained of herein occurred in the State of Kansas, making this Court an appropriate forum for the adjudication of Plaintiff's claims.

## FACT COMMON TO ALL COUNTS

31. At all times relevant herein, plaintiff J.K. was student at George Nettels Elementary School ("GNES"), located in Pittsburg, Kansas.

32. GNES is owned, operated, and under the supervision and authority of Defendant School District.

33. Defendant SEK Interlocal #637 ("SEK") provided special education services to Defendant School District, which includes GNES. Upon information and belief, SEK is a separate entity that provides special educations teachers and para-educators to Defendant School District.

34. At all times relevant herein, Defendant Jackson was the Principal at GNES and held a position of authority and control over plaintiff J.K. and owed him a fiduciary duty.

35. At all times relevant herein, Defendant Wingert was a Teacher for GNES and held a position of authority and control over plaintiff J.K. and owed him a fiduciary duty.

36. At all times relevant herein, Defendant Kubler was Director for Defendant SEK, who provided special education services to Defendant School District and J.K.'s school and held a position of authority and control over J.K. and owed him a fiduciary duty.

37. At all times relevant herein, Defendant Ratzlaff was Coordinator for Defendant SEK, and held a position of authority and control of J.K. and owed him a fiduciary duty.

38. At all times relevant herein, Plaintiff's grandmother, S.K., and grandfather and next friend, D.K. had temporary legal custody and temporary physical custody of J.K.

39. J.K., by and through his Grandparent and Next Friend, D.K., brings this lawsuit against Defendants because of the disability discrimination that J.K. suffered while attending school as a student at GNES.

40. Defendants failed to provide an educational environment free of harassment and discrimination for J.K. after learning of the harassment/discrimination.

41. J.K. is autistic and essentially non-verbal. At GNES, J.K. learns in a classroom specifically designed for the needs of autistic children.

42. Defendant Katie Allison Wingert ("Wingert") was assigned as J.K.'s teacher for the 2023-2024 school year at GNES.

43. On information and belief, in approximately the fall of 2022, a para-educator, I.W., reported Wingert's inappropriate and aggressive handling of J.K. to the Interlocal and the Board of Education in an email with a photo, including that Wingert grabbed and yanked J.K. so hard it tore his shirt and caused scratches on his skin.

44. Additionally, on information and belief, multiple para-educators wrote down their observations of Ms. Wingert's inappropriate, aggressive, and/or abusive behavior toward students, and their written observations were provided to Chris Ratzlaff, Coordinator for SEK Interlocal #637.

45. On information and belief, Defendants ignored the para-educators' complaints and concerns, and many of the paraprofessionals voluntarily resigned and did not return to GNES for the 2023-2024 school year.

46. Upon information and belief, on or about October 12, 2023, Lauren, a para-educator for Pittsburg Middle School relayed a message to S.K. from a former para-educator at GNES,

S.M., concerning abuse in J.K.'s classroom during the current school year and the year prior, 2022-2023.

47. On or about October 14, 2023, D.K.'s sister, Emily Crain ("Crain"), who is a teacher in the Pittsburg Community Schools Unified School District 250, was anonymously contacted by someone believed to be a para-educator at GNES about J.K. being routinely locked in a bathroom while he was having a "spell." Crain contacted D.K. and relayed the anonymous tip.

48. According to the anonymous tip, when J.K.'s classroom had a substitute teacher on October 13, 2023, and J.K. became upset, the substitute asked the para-educators in the room what the teacher, Wingert, typically did in that sort of situation. The para-educators responded that Wingert would typically lock J.K. in the bathroom "until he calmed down, typically 20-30 minutes."

49. Upon information and belief, the substitute teacher immediately notified another teacher across the hallway about what the para-educators had relayed. Upon information and belief, that teacher recommended the substitute teacher report the information to GNES.

50. On October 15, 2023, a former para-educator from GNES for school year 2022-2023, Aspen Wilbert ("Wilbert"), contacted S.K. and D.K. to inquire about any possible abuse. Wilbert relayed that J.K.'s teacher, Wingert, had been verbally and physically abusive to the students and had been especially abusive to J.K.

51. Upon information and belief, more than one para-educator reported to Defendant SEK and Defendant School District about Wingert's behavior during the 2022-2023 school year, but no action was taken. Many, if not all, of those para-educators quit their jobs and did not return to the classroom for the 2023-2024 school year.

52. After receiving information about the anonymous tip, D.K. contacted Ratzlaff, Coordinator for Defendant SEK, who indicated that a meeting would be held with the family on the following Monday, October 16, 2023.

53. On October 16, 2023, D.K. and S.K. met with Ratzlaff and GNES Principal Diane Jackson. They were informed that the School District and/or SEK would conduct an investigation, which may take two to three days. Jackson and Ratzlaff assured S.K. and D.K. they would be notified of the conclusion of the investigation.

54. During the meeting, D.K. stated he believed the school resource officer would need to be involved because the investigation involved child abuse, but he was told the investigation would not include the school resource officer.

55. D.K. and S.K. removed J.K. from GNES while the investigation was ongoing and contacted his care team to obtain a doctor's note to justify J.K.'s absence.

56. S.K. also contacted J.K.'s behavioral health doctor, Dr. Michael Slogic, at the University of Kansas Medical Center, to advise of the situation. After a conversation with Dr. Slogic, social worker Julia Teel contacted S.K. and indicated that she would report information about the abuse to the Department of Children and Families.

57. On October 19, 2023, S.K. and D.K. received an email that Defendant SEK and Defendant School District wished to schedule a phone call with them. During that call, S.K. and D.K. were advised that the investigation would be turned over to the School Resource Officer, Bill Tomassi, with the Crawford County Sheriff's Office.

58. S.K. and D.K. were not contacted by Defendant SEK or Defendant School District again until October 26, 2023. On October 26, 2023, SEK called S.K. to relay that the resource

officer conducting the investigation had "a conflict" but that "the teacher has been removed from her position."

59. When S.K. asked whether Wingert's removal was permanent or temporary, SEK did not provide an answer.

60. During that call, SEK advised S.K. that there were three options regarding J.K. moving forward: 1) withdraw J.K. from GNES, 2) have J.K. return to his regular classroom with a substitute teacher in charge, or 3) have J.K. attend a different classroom in the same building.

61. Both Dr. Slogic and Ms. Teel indicated it would not be in J.K.'s best interest to return to the same classroom and/or school associated with his abuse, even if the teacher was removed, as simply attending the same school could be triggering and upsetting for J.K.

62. S.K. and D.K. believed the options SEK posed to them were inappropriate and inadequate because returning to GNES at all could be triggering and upsetting for J.K.

63. Upon information and belief, Defendant SEK and Defendant School District ignored numerous complaints of abuse at the hands of Wingert. If those reports had been taken seriously, the ongoing physical and mental abuse of J.K. could have been avoided.

64. Upon information and belief, Defendant SEK and Defendant School District have allowed Wingert to continue to teach children with disabilities, when they knew, or in the exercise of reasonable care, should have known that she was inflicting physical and mental harm on children with disabilites, including J.K.

65. Because the school has failed to act in accordance with appropriate safety measures for J.K., considering his disability, J.K. was violated by Wingert.

66. Ensuring adequate supervision and a safe environment free from harassment, discrimination, and abuse, and ensuring the protection of students with disabilities was the

responsibility of Principal, Diane Jackson, as well as of Director, Greg Kubler, and Coordinator, Chris Ratzlaff.

67. There was not an adequate educational plan in effect for J.K. by Defendant School District and Defendant SEK to keep J.K. safe.

68. Ensuring that J.K. has an adequate, safe, learning environment free from discrimination, harassment, and abuse within Pittsburg Community Schools Unified School District 250 is the responsibility of the Defendants.

69. Upon information and belief, while J.K was a student of Defendant School District, and prior to the abuse alleged herein, Defendants School District, Jackson, Wingert, Kubler, and Ratzlaff were aware of, and had knowledge of J.K.'s vulnerability, and failed to protect J.K. or enact appropriate safety measures to protect him.

70. Upon information and belief, while J.K. was a student of Defendant School District and prior to the abuse alleged herein, Defendants School District, Jackson, Kubler and Ratzlaff were aware of, and had knowledge of reported abuse and deprivation of civil rights of students with disabilities, at the hands of Defendant Wingert.

71. Defendants failed to adequately investigate the abuse in a timely manner.

72. Defendants failed to take adequate remedial measures in response to the abuse.

73. Defendants failed to investigate, punish, terminate, or otherwise prevent future abuse by Wingert against J.K. and others.

74. Despite having knowledge that should have alerted Defendant School District, Defendant SEK and individual Defendants that Wingert discriminated against, harassed and abused J.K and other disabled students, Defendants failed to implement proper safeguards to protect J.K.

75. Defendants all had a fiduciary duty, to the students in their custody and care, and specifically to J.K., to protect him from assault, deprivation of his civil rights, or other injury while in their custody and care as a student at GNES.

**COUNT I**
**Negligence *Per Se***
**Against Defendants Jackson, Kubler**
**and Ratzlaff (collectively, "Individual Defendants")**

76. Plaintiff incorporates by reference every other paragraph as though fully set forth herein.

77. Pursuant to K.S.A. § 38-2223, Kansas law requires all teachers, school administrators, and other employees of an educational institution, and any person who is employed by or is an officer of such association to report information gives them reason to suspect that a child has been harmed as a result of physical, mental or emotional abuse, and such reporting must be done in a specific manner, time, and satisfy the Statute in all other pertinent ways.

78. The statute is founded on the assumption that all students need and are entitled to a safe learning environment.

79. This statute is intended to protect students from physical, mental and emotional abuse.

80. J.K. is a member of the class of persons this statute was intended to protect.

81. J.K.'s injury was the type that this statute was intended to protect.

82. Individual Defendants had a ministerial duty to immediately report the abuse and assaults against J.K. to law enforcement pursuant to K.S.A. § 38-2223.

83. Upon information and belief, at the time they became aware of the physical, mental, and/or emotional abuse against J.K., Individual Defendants knew they had an obligation under the

law to immediately report the abuse against J.K. to the Kansas Department for Children and Families or the appropriate law enforcement agency.

84. Despite knowledge of abuse committed by Wingert, Individual Defendants failed to immediately report to law enforcement in violation of Kansas law, specifically, K.S.A. § 38-2223.

85. Upon information and belief, Individual Defendants' failure to promptly report abuse of J.K. to law enforcement in violation of Kansas law, specifically, K.S.A. § 38-2223 was done willfully and in bad faith.

86. As a direct and proximate result of Individual Defendants' failure to immediately report to law enforcement, Wingert caused injuries and damages to J.K. as herein described.

87. J.K. has incurred and will incur necessary and reasonable medical expenses, has suffered, and will continue to suffer pain, mental anguish, and emotional distress, and has experienced other economic hardships, all as direct and proximate result of Individuals Defendants' negligence.

88. These injuries sustained by J.K. were reasonably foreseeable as a result of Individual Defendants' breaches of the duties they owed to J.K. and J.K.'s disability.

WHEREFORE, Plaintiff prays for judgment in his favor and against Individual Defendants on Count I of the Complaint, for an award of compensatory and punitive damages, for his costs expended, pre-judgment and post-judgment interest as provided by law, and for such further and equitable relief as this Court deems just and proper.

**COUNT II**
**Negligence**
**Against Defendants Jackson, Kubler and Ratzlaff (collectively, "Individual Defendants")**

89. Plaintiff incorporates by reference every other paragraph as though fully set forth herein.

90. As a student in the School District, J.K. was under custody and control of the School District.

91. SEK provided special education services to J.K. at GNES by hiring and supplying teachers and para-educators for the School District.

92. Wingert was a teacher for the School District and SEK.

93. As Principal for defendant School District, Ms. Jackson had a duty to possess and use that degree of skill and care ordinarily used by a reasonable and/or careful Principal to protect students, including J.K., from unreasonable risks of harm.

94. As teacher for defendant School District and SEK, Ms. Wingert had a duty to possess and use that degree of skill and care ordinarily used by a reasonable and/or careful teacher to protect students, including J.K., from unreasonable risks of harm.

95. As Director for defendant SEK, Mr. Kubler had a duty to possess and use that degree of skill and care ordinarily used by a reasonable and/or careful Director to protect students, including J.K., from unreasonable risks of harm.

96. As Coordinator for defendant SEK, Mr. Ratzlaff had a duty to possess and use that degree of skill and care ordinarily used by a reasonable and/or careful Coordinator to protect students, including J.K., from unreasonable risks of harm.

97. At the time of and leading up to the misconduct alleged herein, the Individual Defendants could have reasonably foreseen that Plaintiff's injuries might occur under the circumstances because Individual Defendants:

    a. upon information and belief, knew or should have known of other instances and of the likelihood that J.K. could be a victim of abuse as a result of his disability;

    b. knew of should have known that failing to make a mandatory report concerning the alleged behavior of Wingert to law enforcement would enable her to continue abusing students such as J.K; and

    c. knew or should have known that allowing J.K to continue interacting with Wingert subjected J.K. to the possibility of further abuse without proper remedial measures implemented to protect J.K.'s safety.

98. Despite that knowledge, Individual Defendants completely to protect J.K. from Wingert's abuse and failed to institute remedial measures that would protect J.K. from ongoing harassment.

99. Individual Defendants breached their respective duties to properly supervise students, and their agents and employees and to intervene effectively to stop the harassment or discrimination J.K. suffered at the hands of Wingert by:

    a. Failing to immediately report the suspected or actual physical, emotional, or mental harm of J.K. by Wingert to the Department of Children and Families or law enforcement, as required pursuant to K.S.A § 38-2223;

    b. Failing to monitor the classrooms and school for abuse;

    c. Failing to timely recognize the severity of the abuse against J.K.;

    d. Failing to properly address the abuse against J.K..;

    e. Failing to ensure that J.K. was provided a safe learning environment free from abuse and misconduct;

    f. Failing to adequately discipline or otherwise discourage the behavior of Wingert, who abused J.K..;

    g. Committing acts and omissions that encouraged and enabled continual abuse of J.K.;

    h. Failing to implement measures to prevent abuse, even though such measures and the need for such measures have been widely known among educational researchers and educators for over two decades and successfully implemented in other schools across the United States;

    i. Failing to properly, timely, and adequately report allegations made to them about Wingert's conduct; and

j.  Committing other acts and omissions currently unknown to Plaintiff.

100.    As a direct and proximate result of Individual Defendants' negligence, J.K. was exposed to foreseeable and known risks of severe injury and was injured physically and emotionally.

101.    The injuries sustained by J.K. were reasonably foreseeable as a result of the Individual Defendants' breach of their duty to enact adequate safeguards to protect J.K. from abuse, given his disability and resulting vulnerability to abuse.

102.    The injuries sustained by J.K. were reasonably foreseeable as a result of the Individual Defendants' breach of their duty to report the abuse of students by Wingert to the Department for Children and Families or law enforcement.

103.    Upon information and belief, Individual Defendants' actions described above were done willfully and in bad faith.

104.    J.K. has incurred and will incur necessary and reasonable medical expenses, has suffered and will continue to suffer pain, mental anguish, and emotional distress, and has experienced other economic hardships, all as direct and proximate result of Individuals Defendants' negligence.

105.    The injuries sustained by J.K. were reasonably foreseeable as a result of Individual Defendants' breaches of the duties they owed to J.K.

WHEREFORE, Plaintiff prays for judgment in his favor and against Individual Defendants on Count II of the Complaint, for an award of compensatory and punitive damages, for his costs expended, pre-judgment and post-judgment interest as provided by law, and for such further and equitable relief as this Court deems just and proper.

## COUNT III
### Fourteenth Amendment, 42 U.S.C. § 1983
### (Against All Defendants)

106.    Plaintiff incorporates by reference every other paragraph as though fully set forth herein.

107.    The above described conduct by Defendants violated the rights of Plaintiff to equal protection of the laws as guaranteed by the Fourteenth Amendment of the Constitution of the United States and §1983 of Title 42 of the United States Code.

108.    Defendants intentionally deprived Plaintiff of the full and equal benefits of education because of his disability.

109.    The actions and conduct of the above described perpetrators as set forth herein created a hostile, offensive and intimidating environment and detrimentally affected Plaintiff.

110.    The actions and conduct by the above described perpetrators as set forth herein was severe and pervasive and based on Plaintiff's disability and constituted discrimination based on his disability.

111.    The abuse and violation of civil rights suffered by Plaintiff is the result of a custom, practice, or policy of Defendants that ignores or otherwise fails to address complaints of abuse of disabled students.

112.    The actions of the above-described perpetrators as set forth herein would have detrimentally affected a reasonable person of the same disability in Plaintiff's position.

113.    Despite having knowledge of such deprivation on the basis of Plaintiff's disability, Defendants failed to take corrective measures.

114.    Defendants are liable for the actions taken against Plaintiff because of the complained of conduct, customs and/or policies which deprived Plaintiff of his right to be free from discrimination, were created, implemented, approved, actively endorsed, and/or ratified by Defendant District, and individual Defendants had policy making authority for the District and were responsible for implementing such customs and policies.

115.    Defendants Jackson, Wingert, Kubler and Ratzlaff were acting under the color of state statute, ordinance, regulation, custom, policy or usage.

116.    As a direct result of Defendants' conduct, Plaintiff has suffered damages including emotional distress.

117.    Defendants acted with an evil motive or reckless or callous indifference to the rights of Plaintiff in handling complaints and failing to prevent or prohibit the complained of conduct, thereby entitling Plaintiff to an award of punitive damages in an amount that will punish Defendants and deter them and others from like conduct.

WHEREFORE, J.K. seeks judgment in his favor and against Defendants on Count III of the Complaint, for an award of compensatory damages, for an award of punitive damages against Defendants, for costs expended, for his attorneys' fees, together with costs of suit and for such equitable and further relief as this Court deems just and proper.

## COUNT IV
## 42 U.S.C. § 1983 – State Created Danger
### (Against Defendant District, Defendant SEK and Administrator Defendants)

118.    Plaintiff incorporates by reference every other paragraph as though fully set forth herein.

119.    Because Kansas has chosen to provide a free public education to its children, J.K. has a constitutional property right to a free public education protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

120.    J.K. also has a Constitutional right to personal security, bodily integrity, to due process and to be secure and to be left alone, all protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

121.    Defendant School District and Defendant SEK, and all individually named defendants, acting both in their capacity as agents of the School District and/or SEK and individually at all times referenced in this Complaint, were acting under the color of state law.

122.    At the time of their actions, Defendant School District, Defendant SEK, and administrator Defendants knew or should have known that abuse existed within the GNES.

123.    At the time of their actions, Defendants had actual and/or constructive knowledge of ongoing abuse of the kind suffered by J.K. at the hands of Defendant Wingert, who was under Defendants' custody and control, and that the abuse was depriving J.K. of his right to an education, his right to bodily integrity, and to his right to personal security.

124.    At the time of their actions, the School District, SEK, and Defendant administrators knew which teacher was committing abuse and it was readily foreseeable that the abuse would continue into the future and result in the deprivation of J.K.'s constitutional rights to a public education, to personal security, to bodily integrity, and to be secure and left alone.

125.    Defendant School District, Defendant SEK, and the administrator Defendants enhanced the danger to J.K. and rendered him more vulnerable to the deprivation of his rights to an education, to personal security, to bodily integrity, and to be secure and left alone through numerous affirmative acts, including but not limited to:

a. Affirmatively responding to reports of abuse with disbelief;
b. Affirmatively responding to reports of abuse by taking steps with the goal of protecting the school district and Defendant Wingert rather than investigating the truth of the complaints;
c. Affirmatively continuing to allow Defendant Wingert unsupervised access to children; and
d. Affirmatively committing other acts and omissions as yet undiscovered by Plaintiffs.

126. Defendant School District, Defendant SEK, and the administrator Defendants committed these affirmative acts with a deliberate indifference to and reckless and willful disregard for J.K.'s constitutional rights. These affirmative acts increased the danger to J.K. and led to his injuries in that they:

a. Left J.K. at the mercy of abuser Wingert;
b. Encouraged further and ongoing abuse by sending the message to his abuser that the school tacitly approved of the abuse and would not interfere in any way; and
c. Caused, increased, and accelerated J.K.'s emotional distress and despair.

127. These affirmative acts by Defendant School District, Defendant SEK, and the administrator Defendants, taken as a whole and in the context of known abuse in the school district, increased the danger to J.K. and amount to egregious and outrageous behavior.

128. J.K. has incurred emotional distress and anguish as a direct and proximate cause of Defendants' actions.

129. Because of the foregoing, Plaintiff has been damaged and is entitled to fair and reasonable compensation.

130. Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of J.K. and others, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff seeks judgment in his favor on Count IV of the Complaint, for an award of compensatory damages, for an award of punitive damages against Defendants, for costs

expended, for his attorneys' fees, and for such equitable and further relief as this Court deems just and proper.

## COUNT V
**Supervisor Liability for Participation in and Encouragement of Unconstitutional Misconduct by Subordinates (42 U.S.C. § 1983)**
**(Against Administrator Defendants)**

131.    Plaintiff incorporates by reference every other paragraph as though fully set forth herein.

132.    At all times relevant herein, Defendant Jackson had supervisory authority over all the teachers and employees of GNES, including Defendant Wingert.

133.    At all times relevant herein, Defendant Kubler had supervisory authority over all the teachers and employees of GNES, including Defendant Wingert.

134.    At all times relevant herein, Defendant Ratzlaff had supervisory authority over all the teachers and employees of GNES, including Defendant Wingert.

135.    At all times relevant herein, the administrator Defendants were acting under the color of state law both in their individual and official capacities.

136.    Defendants Jackson, Kubler and/or Ratzlaff knew or should have known that teachers and administrator in the school district were unconstitutionally placing students, including J.K., in increased risk of severe, ongoing, and targeted abuse and the resulting foreseeable deprivations of his constitutional rights to a public education, to personal security, to bodily integrity, to be secure and left alone, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States.

137.    Defendants Jackson, Kubler and/or Ratzlaff knew or should have known that teachers and other employees at GNES were placing students, including J.K., in increased danger of severe, ongoing and targeted abuse and the resulting deprivation of his Constitutional

rights to a public education, to bodily integrity, to lift, to be secure and left alone, and to substantive due process under the Fourteenth Amendment to the Constitution of the United States.

138.    On information and belief, Defendants had actual and/or constructive notice of a widespread and persistent pattern of unconstitutional misconduct in the form of failing to effectively prohibit and prevent instances of disability discrimination and harassment.

139.    By refusing to intervene to prevent their subordinate's continuing patterns of unconstitutional misconduct toward J.K. and other students who were victims of abuse, administrator Defendants encouraged and participated in that conduct and demonstrated a deliberate indifference to or tacit authorization of their subordinate's offensive acts.

140.    As a direct result of their encouraging and participating in the unconstitutional misconduct of their subordinate, Defendants caused J.K. to suffer deprivation of his rights to public education, personal security, bodily integrity, to be secure and left alone, and to substantive due process under the Fourteenth Amendment of the Constitution of the United States.

141.    J.K. has suffered physical and mental anguish as a direct and proximate result of Defendants' actions.

142.    Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of J.K. and others similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff seeks judgment in his favor and against Defendants on Count V of the Complaint, for an award of compensatory damage, and for an award of punitive damages against Defendants, for costs expended, for his attorneys' fees and for such further and other relief as this Court deems just and proper.

**<u>COUNT VI</u>**
**Denial of Due Process through Failure**
**to Train and Supervise (42 U.S.C. § 1983)**
**(Against Defendant School District and Defendant SEK)**

143.     Plaintiff incorporates by reference every other paragraph as though fully set forth herein.

144.     While a teacher within the Pittsburg Community Schools Unified School District, Defendant Wingert engaged in a consistent pattern of physical, mental, and/or emotional abuse of students with disabilities, including J.K.

145.     Defendant School District and Defendant SEK had actual and/or constructive notice of the abuse being committed by Defendant Wingert.

146.     Despite Defendant School District and Defendant SEK's actual and/or constructive knowledge of an ongoing pattern of abuse, they failed to properly train and supervise its employees and agents on reporting, investigating, recognizing, and preventing abuse.

147.     As a result of Defendant School District and Defendant SEK's failure to train and supervise its employees and agents, J.K. was deprived of his rights to a free public education, to bodily integrity, to be secure and left alone, and to his right to substantive due process under the Fourteenth Amendment to the United States Constitution.

148.     Defendant School District and Defendant SEK's failure to train and supervise its employees and agents constituted a deliberate indifference to the deprivation of J.K.'s rights to a public education, to personal security, to bodily integrity, to be secure and left alone, and to substantive due process under the Fourteenth Amendment to the United States Constitution.

149.     J.K. has suffered physical pain and mental anguish as a direct and proximate result of Defendants' actions.

150.     The conduct of the Defendants which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of J.K. and others similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff seeks judgment in his favor and against Defendant on Count VI of the Complaint, for an award of compensatory damages, for an award of punitive damages against Defendants, for costs expended, for his attorneys' fees, and for such equitable and further relief as this Court deems just and proper.

### COUNT VII
### Denial of Substantive Due Process through Policy, Custom and Practice of Failing to Respond to or Prevent Discrimination and Harassment (42 U.S.C. § 1983) (Against Defendant School District and Defendant SEK)

151.     Plaintiff incorporates by reference every other paragraph as though fully set forth herein.

152.     While a teacher within Pittsburg Community Schools Unified School District 250, Defendant Wingert engaged in a consistent pattern of physical, mental, and/or emotional abuse of students with disabilities.

153.     The School District and SEK had actual and/or constructive notice of the abuse, discrimination, and harassment being committed by Defendant Wingert.

154.     On information and belief, Defendants had actual and/or constructive notice of a widespread and persistent pattern of unconstitutional misconduct in the form of failing to effectively prohibit and prevent instances of discrimination and harassment.

155.     Upon information and belief, Defendant District has policies in place designed to prohibit discrimination and harassment. However, Defendant School District failed to

follow such policies and failed to effectively prohibit and prevent the discrimination and harassment directed toward J.K.

156.    By rejecting and refusing to follow its written policy and refusing to intervene to prevent or stop Defendant Wingert's continuing pattern of unconstitutional misconduct toward J.K. and other students who were victims of abuse, the school district encouraged and participated in that conduct and demonstrated a deliberate indifference to and/or tacit approval of the offensive acts.

157.    By refusing to intervene to prevent or stop Defendant Wingert's continuing pattern of unconstitutional misconduct toward J.K. and other students who were victims of abuse, the School District and SEK chose to engage in an official policy of inaction.

158.    The School District and SEK's custom and practice of inaction was a moving force and direct link to the abuse of John Doe.

159.    The School District and SEK were aware of the abuse, had the ability to control the situation and instead chose to do nothing to stop it.

160.    J.K. has suffered physical pain and mental anguish as a direct and proximate result of Defendants' actions.

161.    Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of J.K. and others similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff seeks judgment in his favor and against Defendant on Count VII of the Complaint, for an award of compensatory damages, for an award of punitive damages against Defendants, for costs expended, for his attorneys' fees and for such other equitable and further relief as this Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates the United States District Court for the District of Kansas in Kansas City, Kansas as the place of trial for the claims alleged herein.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues in his Complaint for Damages so triable.

**HOLMAN SCHIAVONE, LLC**

By: */s/ Anne Schiavone*
  Anne Schiavone, KS Bar #19669
  Kathleen E. Mannion, KS Bar #25362
  4600 Madison Avenue, Suite 810
  Kansas City, Missouri 64112
  Telephone: 816.283.8738
  Facsimile: 816.283.8739
  Email: aschiavone@hslawllc.com
  Email: kmannion@hslawllc.com
  **ATTORNEYS FOR PLAINTIFF**